**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LORI CERECEDES,<br><br>               Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>            Defendant. | No. CV 04-9515-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

      Plaintiff filed this action on November 26, 2004, seeking review of the Commissioner's denial of her application for Supplemental Security Income benefits.  The parties filed a Consent to proceed before the undersigned Magistrate Judge on January 12, 2005.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 14, 2005, that addresses their position concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 5, 1963.  [Administrative Record ("AR") at 72.]  She has an eleventh grade education.  [AR at 85, 358-59.]  Plaintiff previously worked as a customer service representative.  [AR at 80, 359-61.]

On December 28, 2001, plaintiff protectively filed an application for supplemental security income benefits, in which she alleged she has been unable to work since June 1999 due to depression, back problems, and Tourette's syndrome.  [AR at 23, 68-74, 78-79.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on June 30, 2003, at which plaintiff appeared with counsel and testified on her own behalf.  A vocational expert and a medical expert also testified.  [AR at 351-442.]  On September 26, 2003, the ALJ determined that plaintiff was not disabled because she can perform a limited range of light work with certain restrictions.[1]  [AR at 20-30.]  When the Appeals Council denied review on September 24, 2004, the ALJ's decision became the final decision of the Commissioner.  [AR at 8-11.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term substantial evidence means more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.

---

[1]   Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).

When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are disabled for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a severe impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a severe impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments (Listing) set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 23, 29.] At step two, the ALJ concluded that plaintiff's impairments -- anxiety and depression, mechanical back pain, and "status post to compression fracture at T12, with residual disc bulge" -- are severe. [AR at 24, 29.] At step three, the ALJ found that the impairments do not meet or equal any impairments in the Listings. [AR at 25, 29.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform light work with certain restrictions. [AR at 26, 30.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 28, 30.] At step five, the ALJ concluded that there are a significant number of jobs in the local and national economies that she can perform. [AR at 29, 30.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

/

/

/

/

---

[2]    Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.

## THE ALJ'S DECISION

Plaintiff contends that the mental limitations assessed by the state agency physician dictate a finding of disability.  Joint Stipulation ("Joint Stip.") at 3.  Plaintiff further argues that remand is necessary for the ALJ to propound a "complete" hypothetical to the vocational expert ("VE") that encompasses plaintiff's moderate limitation in maintaining concentration, persistence, and pace. Joint Stip. at 4-5.

The record contains a mental residual functional capacity assessment completed by a non-examining state agency physician. [AR at 287-90.] The portion of the assessment titled "Summary Conclusions" is comprised of four different categories: understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  In turn, each category has a list of abilities which can be rated as "not significantly limited," "moderately limited," "markedly limited," or "no evidence of limitation."[3]  According to the assessment, the state agency physician found plaintiff's understanding and memory impaired to the extent she experiences moderate limitations in remembering locations and work-like procedures, and in understanding and remembering very short and simple instructions.  She has marked limitations in understanding and remembering detailed instructions. [AR at 287.]

With respect to sustained concentration and persistence, plaintiff has moderate limitations in being able to carry out very short and simple instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being distracted by them, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. [AR at 287-88.] She has marked limitations in her ability to carry out detailed instructions. [AR at 288.]

---

[3]   An ability can also be marked as "not ratable on available evidence."

1   With respect to social interactions, plaintiff is moderately limited in being able to ask simple
2   questions or request assistance, accepting instructions, responding appropriately to criticism from
3   supervisors, getting along with coworkers without distracting them or exhibiting behavioral
4   extremes, and maintaining socially appropriate behavior and adhering to basic standards of
5   neatness and cleanliness. She has marked limitations regarding interacting appropriately with the
6   general public. [AR at 288.]

7   Plaintiff has moderate limitations with respect to the following adaptation traits: being able
8   to respond appropriately to changes in the work setting, being aware of normal hazards and taking
9   appropriate precautions, setting realistic goals or making plans independently of others, and being
10  able to travel in unfamiliar places or use public transportation.  [AR at 288.]  In the final section
11  of the assessment titled "Functional Capacity Assessment," the state agency physician wrote the
12  following:  "capable of SRT ["simple repetitive tasks"]", "limited contact [with] coworkers" and "no
13  public contact." [AR at 289.]

14  Plaintiff also underwent a complete psychiatric evaluation conducted by Dr. Nader
15  Oskooilar. [AR at 291-94.] Dr. Oskooilar observed that plaintiff has "significant" concentration and
16  memory problems, has a limited fund of knowledge, and is easily defocused and distracted. [AR
17  at 293.] He diagnosed her with mood disorder (not otherwise specified), attention deficit
18  hyperactivity disorder (not otherwise specified), Tourette's syndrome, tobacco dependency, and
19  rule out history of substance abuse. [Id.] According to Dr. Oskooilar, plaintiff cannot do complex
20  and abstract activities, but is able to perform simple and repetitive tasks "especially with breaks
21  every two hours." [AR at 294.] She can also "accept limited instruction, interact with limited
22  coworkers, and deal with the stressors of the workplace and complete a normal workday without
23  much interruption from psychiatric conditions."  [Id.] She has "some" trouble with concentration.
24  [Id.]

25  In the decision, the ALJ considered plaintiff's mental impairments and, in determining the
26  mental portion of the RFC, found her to be capable of performing a "full range of simple repetitive
27  [tasks] ... in a work environment where public contact is avoided [and] with only limited contact
28

with co-workers and supervisors."[4] [AR at 26.] In formulating the mental RFC, the ALJ relied upon the opinion of the nonexamining state agency physician, which the ALJ found to be "congruent with, though somewhat more restrictive than[,] the opinion of" Dr. Oskooilar.  [Id.]

During the hearing, the ALJ elicited testimony from a vocational expert, who testified that if plaintiff had the mental RFC assigned by the ALJ -- that is, if she could perform simple and repetitive tasks, was limited in performing detailed instructions, and needed to have limited contact with coworkers while avoiding public contact  -- she could not perform her past work, but would be capable of performing jobs such as a laboratory equipment cleaner, kitchen helper, and hand-packager. [AR at 427-28.]

The ALJ posed another hypothetical to the VE, this time describing an individual with a "slight limitation in understanding and remembering short, simple instructions, carrying out short, simple instructions, and the ability to make judgments on simple work-related decisions," along with a "slight limitation in interacting appropriately with the public, interact[ing] appropriately with ... supervisors, interact[ing] appropriate[ly] with coworkers, and ... responding appropriately to the work pressures in the usual work setting and responding appropriately to the changes in a work ... setting."  Further, the ALJ added a "slight to moderate limitation ... in understanding and remembering detailed instructions and carrying out detailed instructions."[5] [AR at 429-30.] According to the VE, even with these limitations, the individual could still perform work as a laboratory equipment cleaner, kitchen helper, and hand-packager. [AR at 430.]

Plaintiff's attorney also questioned the VE, and posed a hypothetical that included each of the limitations checked off by the state agency physician in the assessment (as set forth supra) with respect to the categories "understanding and memory," "sustained concentration and

---

4   Because the parties in the Joint Stipulation do not dispute the RFC for plaintiff's physical capabilities, the Court restricts its analysis to plaintiff's mental limitations.

5   The ALJ prefaced the hypothetical by explaining that he intended the term "slight limitation" to mean "there's some slight limitations ... but the individual can generally function well," while "moderate limitation" means "the individual is still able to function satisfactorily," and "marked limitation" means "there is a serious limitation in this area." [AR at 429.]

1  persistence," "social interaction," and "adaptation." [See AR at 278-88, 434-37.] The VE testified

2  that a person with those limitations would be unable to work. [AR at 438.]

3      Social Security Ruling 96-6p[6] requires that an explanation of the weight given to the

4  opinions of state agency consultants be included in the ALJ's final decision.  See Social Security

5  Ruling 96-6p, 1996 WL 374180.  Here, in formulating the mental portion of the RFC, the ALJ

6  indicated that he was giving full weight to the opinion of the nonexamining state agency physician.

7  [AR at 26.]  In actuality, however, he credited only a small portion of the physician's opinion, and

8  did not address the remaining findings set forth in the "Summary Conclusions" section of the

9  assessment.  That portion addressed by the ALJ -- i.e., regarding the findings that plaintiff is

10 capable of performing simple and repetitive tasks, but must have limited interaction with

11 coworkers and avoid interaction with the public -- corresponds only to those abilities of plaintiff that

12 the state agency physician found to be markedly limited.  The ALJ ignored all the remaining

13 findings with respect to plaintiff's numerous moderate limitations.[7]  The VE's testimony, however,

14 highlights the critical importance of those limitations, as they would, according to the VE, preclude

15 an individual from working.

16     By selectively adopting just a portion of the state agency physician's opinion, and

17 neglecting the remainder, the ALJ in essence implicitly rejected a large part of the opinion.  It

18 follows, therefore, that the ALJ did not provide any reasons for the rejection.  See Social Security

19 Ruling 96-6p, 1996 WL 374180 (ALJ "may not ignore these opinions [made by state agency

20 physicians] and must explain the weight given to the opinions in their decisions"); see also Cotter

21 _____

22     [6]    Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social
   Security Administration interpretations of the statute it administers and of its own regulations," and
23 are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."
   Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).
24

25     [7]    Despite the ALJ's definition of "moderate limitation" (the individual can still function
   satisfactorily) -- which may explain the apparent inconsistency in the state agency physician's
26 report that plaintiff is capable of simple repetitive tasks on the one hand, but is also moderately
   limited in her ability to understand, remember, and carry out very short and simple instructions on
27 the other hand -- the VE nevertheless concluded that an individual with all of plaintiff's moderate
   and marked limitations could not perform any work. The ALJ does not explain this inconsistency,
28 or his failure to include the moderate limitations in the RFC.

1  v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject
2  evidence for no reason or the wrong reason [citation omitted], an explanation from the ALJ of the
3  reason why probative evidence has been rejected is required so that a reviewing court can
4  determine whether the reasons for rejection were improper.").  Nor did the ALJ in his decision
5  address the VE's testimony that plaintiff would be unable to work if she were limited as described
6  in the state agency physician's assessment.

7       As the ALJ accorded the state agency physician's opinion significant weight, he is not
8  permitted to selectively choose from that opinion to support the RFC determination, while ignoring
9  the remaining critical findings.  See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)
10 (error for an ALJ to ignore competent evidence in the record in order to justify his conclusion).
11 Remand is therefore in order to ensure that the ALJ fully considers the findings of the state
12 agency physician.  If, in fact, plaintiff is found to be limited as indicated in the assessment, it
13 appears from the VE's testimony that she should be determined disabled for social security
14 purposes.  On the other hand, if the ALJ rejects some or all of the limitations at issue, he must
15 premise the rejection on legally sufficient reasons.  Because the result of this determination may
16 impact the formulation of the RFC, plaintiff's remaining issue regarding the hypothetical to the VE
17 will not be addressed at this time.

18 /
19 /
20 /
21 /
22 /
23 /
24 /
25 /
26 /
27 /
28 /

9

## VI.

## **REMAND IS APPROPRIATE**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to evaluate the opinion of the nonexamining state agency physician.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.[8]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED: March 16, 2006                                    /S/
                                               _____
                                                    PAUL L. ABRAMS
                                          UNITED STATES MAGISTRATE JUDGE

_____

[8]    In light of the Court's remand order, the Court does not address plaintiff's remaining contention of error.